# UNITED STATES

*v.*

# P. BESTARD & CO.

San Juan, Law, No. 398.   General Appraisers' Return, No. 1851.

Edible fish sounds should be classified, for customs purposes, under ¶ 23, tariff act of 1897, and not under ¶ 496 of § 2 of said law.

Opinion filed May 4, 1907.

---

*The District Attorney* for the United States.

No appearance for defendants.

RODEY, Judge, delivered the following opinion:

On January 28, 1906, P. Bestard & Co., of Ponce, P. R., imported certain fish sounds and invoiced them under ¶ 496 of the tariff act of July 27, 1897, but the collector classified

United States v. P. Bestard & Co.

them under § 23 of that act, and charged a duty of 15 cents a pound and 20 per cent ad valorem against them. The importers filed a protest to such classification and took an appeal to the board of general appraisers at New York, which sustained their protest, and from which action the collector applied for and obtained an order of this court to review the same. Due return was made to the order and the matter is now before us for final hearing. The importer has paid no attention to the case in this court and so the case proceeded *ex parte.* A hearing was had in open court, the evidence of the witnesses taken, and the samples of the merchandise introduced as exhibits were examined by the court. Just before this decision, we caused the stenographer to read the notes of the testimony in full, and from it we state the following facts:

There is a very considerable quantity of these fish sounds imported into Porto Rico annually. The sounds are washed perfectly clean and probably pressed and dried. That is the evidence, and it is probably true, judging from the samples introduced. A sample said to be the crude article, which a deputy collector of customs testified he secured for the purposes of this case from New York, was also introduced in evidence. It is twice or three times as thick and is not at all scraped, split, washed, cleaned, or dried, as the sample of the sounds in question is. The evidence also shows that these sounds imported in Porto Rico are a superior article and are entirely used for food, the inhabitants making some sort of a dish with raisins and sweet peppers out of them. They are worth from 25 to 35 cents a pound as invoiced and retail from 50 to 75 cents a pound. None of the crude article is ever seen on the island. It is not imported here and no sounds are imported for manufacturing purposes

at all such as the crude article is used for when imported at New York, Boston, and other places.

We have gone through quite a number of Treasury decisions on this subject furnished us by the collector of customs, and find that the decisions heretofore have varied very much, but all were based upon an article used in manufacture, and none of the decisions, save the recent ones, are given in the light of an article of this kind, of a character that can be used for food. The United States attorney furnishes us with a brief and argument in the case, which we have examined, together with its references, with considerable care, and while it makes this opinion longer than it otherwise might be, still it is a clear exposition of the status of the conflicting decisions, and we subjoin it as follows:

"The fish sounds in question were classified by the collector under ¶ 23 of the customs or tariff act of July 24, 1897 (30 Stat. at L. 151, chap. 11, U. S. Comp. Stat. 1901, p. 1628), which provides: '23. Gelatine, glue, isinglass, or fish glue, and prepared fish bladders or fish sounds, valued at not above ten cents per pound, two and one-half cents per pound; valued at above ten cents per pound and not above thirty-five cents per pound, twenty-five per cent ad valorem; valued above thirty-five cents per pound, fifteen cents per pound and twenty per centum ad valorem.'

"The importer protested, claiming that the correct classification should have been under ¶ 496 of the same act, which provides: '496. Bladders, and all integuments and intestines of animals, and fish sounds, crude, dried, or salted for preservation only, and unmanufactured, not specially provided for in this act.'

"Paragraph 496, just quoted, is part of § 2 of the act

above named, which provides: 'Sec. 2. That on and after the passage of this act, unless otherwise specially provided for in this act, the following articles when imported shall be exempt from duty.'

"The fish sounds imported into Porto Rico are used, as testified to by the importers called by the government on this hearing, exclusively for food. This fact must be borne in mind when reading the Treasury decisions which interpret the foregoing paragraphs of the tariff act, since prior to the decisions based on importations of this article into Porto Rico, the board of general appraisers dealt only with fish sounds that were either absolutely crude, and which would be used in the United States in the manufacture of isinglass, or prepared and more or less approaching the manufactured article.

"The first case arising under an importation of these edible fish sounds into Porto Rico is protest 138,100 of Cerecedo Hermanos of San Juan (a member of which firm was a witness for the government at this hearing). The board held (G. A. 5,487, T. D. 26,218, 9 Treas. Dec. 556): 'The merchandise consisted of fish sounds, carefully cleaned, pressed, and dried. On the authority of G. A. 5,094 (T. D. 25,562) they were held to be dutiable under ¶ 23, tariff act of 1897, and not under ¶ 258, as classified. As the importers did not make the correct contention, the protest was overruled.'

"In explanation of the foregoing decision it should be stated that the collector classified the importation under ¶ 258 of the tariff act as 'fish in packages, not specially provided for in this act,' whereas the importer claimed the correct classification to be under ¶ 496, as is the claim in the case at bar. This case was decided in March, 1905.

"The next case, which was decided by the board in April,

1905, arose under an importation of fish sounds made by F. Font & Hermano (a member of which firm was also a witness on behalf of the government at this hearing), and, upon the protest made by this firm against the classification made by the collector, the board held: 'Certain fish sounds, classified under ¶ 258, tariff act of 1897, were claimed to be free of duty under ¶ 496, as crude fish sounds. The board held that they should have been classified under ¶ 23, relating to prepared fish sounds. This claim not having been made, the protests are overruled.' G. A. 6,045, T. D. 26,289, 9 Treas. Dec. 700.

"The next case (which is the first in which the board appears to have taken notice that fish sounds might be edible) arose under an importation made by S. Y. Tank & Co. at the port of Boston. The board, on August 24, 1905, held: 'The appraiser reports that the merchandise, which is invoiced as fish maw, consists of fish sounds. Being edible and contained in packages of less than one-half barrel, duty was assessed on the same at the rate of 30 per cent ad valorem under ¶ 258. The importers alternatively claim classification and duty at 2 ½ cents per pound, or 25 per cent ad valorem under ¶ 23 of tariff act of 1897, and, in our opinion, this claim is well founded. It appears from the appraiser's report, and we find as a fact, that the merchandise is nothing more than prepared fish sounds, and, although edible, it would seem to be included within the provisions of ¶ 23, which we regard as more specific than that for "fish in packages," contained in ¶ 258. The protest is sustained and the collector's decision reversed.' T. D. 26,678, G. A. 6,138, 10 Treas. Dec. 207.

"The next case arose upon the protest of Wing Sing Lung & Co. against the assessment of duty by the collector of customs at the port of Boston. In this case the board followed G. A.

United States v. P. Bestard & Co.

6,138 (T. D. 26,678) above cited, relating to edible fish sounds held to be dutiable under ¶ 23, tariff act of 1897, as claimed by the importers. G. A. 7,879, T. D. 26,682; 10 Treas. Dec. 220.

"The importation which gave rise to the case now before this court was the next to be passed upon by the board, and its decision, rendered June 9, 1906, is before this court in the return made herein by the board, and is as follows: 'Lunt, General Appraiser: We find that P. Bestard & Co. imported into the port of San Juan, P. R., Jan. 8, 1906, certain dried fish sounds upon which duty· was assessed at 15 cents per pound and 20 per cent ad valorem, and which is claimed to be free under ¶ 496 of said act. Upon examination of the sample in the case we find the merchandise to be crude, dried fish sounds, and hold it to be free under ¶ 496, as claimed. The protest is sustained.'

"Thereafter, and in February, 1907, the same question was again presented to the board by Cerecedo Hermanos & Co., of San Juan, P. R., and the board held the goods to have been properly classified as prepared fish sounds under ¶ 23, tariff act of 1897. G. A. 14,517, T. D. 27,945, Current Treas. Dec.

"In view of the fact that these are the only decisions of the board of general appraisers upon the classification of edible fish sounds, and in view, further, of the testimony herein that the samples of the goods imported in this case are the same as the goods imported by both Font & Hermanos and Cerecedo Hermanos & Co. in the cases decided as above by the board, and that all the government's witnesses testified that crude fish sounds are unknown to the trade in Porto Rico, a sample of which is in evidence in this matter, it is respectfully submitted that the decision of the board of general appraisers herein

United States v. P. Bestard & Co.

should be reversed and set aside, and that the relief herein prayed for by petitioner should be granted."

We regard the question involved here as an important matter, in the light of the conflicting rulings of the customs department above referred to in the brief of the United States attorney for Porto Rico, and, having examined the samples and heard the evidence, as intimated, we are of opinion that the collector of customs is right in his classification of the goods in question under ¶ 23 of the tariff act, and that the decision of the board of general appraisers should be reversed and set aside, and the collector of customs sustained, and it is so ordered.